Lisa N. Neal (Cal. State Bar No. 205465)
 (admitted *pro hac vice*)
Sarah Van Buiten (Cal. State Bar No. 324665)
 (admitted *pro hac vice*)
RUTAN & TUCKER, LLP
18575 Jamboree Road, 9th Floor
Irvine, CA 92612
Telephone: 714-641-5100
Facsimile: 714-546-9035
Email: lneal@rutan.com
          svanbuiten@rutan.com

Hani Z. Sayed (AZ State Bar No. 034461)
hsayed@rutan.com
RUTAN & TUCKER, LLP
16427 N. Scottsdale Road, Suite 260
Scottsdale, Arizona 85254
Telephone: 714-641-5100

Attorneys for Defendant and Counterclaimant
Whitecap Bay Investments, B.V.

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Media Insight Group, Inc. a Florida Corporation, and George Alvarez, an individual, | Case No. 2:23-cv-02180-PHX-MTL |
| Plaintiffs, | **DEFENDANT WHITECAP BAY INVESTMENTS, B.V.'S ANSWER AND COUNTERCLAIMS** |
| vs. | **DEMAND FOR JURY TRIAL** |
| Whitecap Bay Investments, B.V., a foreign corporation. | |
| Defendant | |
| Whitecap Bay Investments, B.V., a foreign corporation, | |
| Counterclaimant, | |
| vs. | |
| Media Insight Group, Inc., a Florida Corporation, and George Alvarez, an individual, | |
| Counter-Defendants | |

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-1-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

1    Defendant Whitecap Bay Investments, B.V. ("Whitecap" or "Defendant"), by and

2 through its undersigned counsel, files its Answer and Counterclaims to the Complaint filed

3 by Media Insight Group, Inc. ("Media Insight") and George Alvarez ("Alvarez"; together,

4 "Plaintiffs") and alleges as follows:

5                    **GENERAL ALLEGATIONS**

6    1.    Whitecap denies that Media Insight "owns various domain names which are

7 subject to this lawsuit," given the recent decision by the World Intellectual Property

8 Organization ("WIPO") Arbitration and Mediation Center to transfer these domains to

9 Whitecap, per the Uniform Domain Name Dispute Resolution Policy ("UDRP").

10 Whitecap lacks knowledge or information sufficient to form a belief about the truth of the

11 remaining allegations in Paragraph 1 of the Complaint, and therefore denies them.

12    2.    Whitecap lacks knowledge or information sufficient to form a belief about

13 the truth of the allegations in Paragraph 2 of the Complaint, and therefore denies them.

14    3.    Whitecap admits that its principal place of business is in the Netherlands.

15 Whitecap denies that it is a "foreign corporation," as it is a Besloten Vennootschap.

16    4.    Whitecap admits that it is not a resident of Arizona but denies the remaining

17 allegations in Paragraph 4 of the Complaint.

18    5.    Whitecap admits that, per Paragraph 3(b)(xii) of the UDRP Rules,

19 Whitecap's complaint in the UDRP Proceeding (Case No. D2023-1376) alleged:

20 "Complainant will submit, with respect to any challenges that may be made by the

21 Respondent to a decision by the Administrative Panel to transfer or cancel the Domain

22 Names that is/are the subject of this Complaint, to the jurisdiction of the courts at the

23 location of the principal office of the concerned registrar."  Except as expressly admitted,

24 Whitecap denies the remaining allegations of Paragraph 4 of the Complaint.

25    6.    Whitecap lacks knowledge or information sufficient to form a belief about

26 the truth of the allegations in Paragraph 6 of the Complaint, and therefore denies them.

27    7.    Whitecap lacks knowledge or information sufficient to form a belief about

28 the truth of the allegations in Paragraph 7 of the Complaint, and therefore denies them.

Rutan & Tucker, LLP
*attorneys at law*

2945/102450-0002
19887670.3 a11/13/23                    -2-                    DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

1    8.    Whitecap denies having a "long-standing business relationship" with

2 Vacation Store and/or Plaintiffs, as any such relationship terminated by the end of 2009

3 due to performance and business issues.  Whitecap denies the remaining allegations in

4 Paragraph 8 of the Complaint.

5    9.    Whitecap lacks knowledge or information sufficient to form a belief about

6 the truth of the allegations in Paragraph 9 of the Complaint, and therefore denies them.

7 Whitecap specifically denies any implication that Vacation Store and/or Plaintiffs were

8 authorized to register any of the domains at-issue in this lawsuit.

9    10.    Whitecap lacks knowledge or information sufficient to form a belief about

10 the truth of the allegations in Paragraph 10 of the Complaint, and therefore denies them.

11 Whitecap specifically denies any implication that Vacation Store and/or Plaintiffs were

12 authorized to register any of the domains at-issue in this lawsuit.

13    11.    Whitecap lacks knowledge or information sufficient to form a belief about

14 the truth of the allegations in Paragraph 11 of the Complaint, and therefore denies them.

15    12.    Whitecap admits that it is the owner and operator of the Excellence Group of

16 Luxury Hotels and Resorts, which includes the chain of Excellence Resorts, Finest

17 Resorts, and Beloved Hotels throughout Mexico and the Caribbean.  Except as expressly

18 admitted, Whitecap denies the remaining allegations of Paragraph 12 of the Complaint.

19    13.    Whitecap admits that Plaintiffs have registered domains.  Whitecap

20 specifically denies any implication that Vacation Store and/or Plaintiffs were authorized to

21 register any of the domains at-issue in this lawsuit.

22    14.    Whitecap denies the allegations in Paragraph 14 of the Complaint.

23    15.    Whitecap admits that, between the early 2000s and 2009, it permitted

24 Vacation Store to sell rooms at three resorts operated by Whitecap.  This relationship was

25 terminated more than thirteen years ago.  Except as expressly admitted, Whitecap denies

26 the remaining allegations of Paragraph 15 of the Complaint.

27    16.    Whitecap admits that, between the early 2000s and 2009, it permitted

28 Vacation Store to sell rooms at three resorts operated by Whitecap.  This relationship was

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23                -3-                DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

1  terminated more than thirteen years ago.  Except as expressly admitted, Whitecap denies

2  the remaining allegations of Paragraph 16 of the Complaint.

3       17.    Whitecap admits that, between the early 2000s and 2009, it permitted

4  Vacation Store to sell rooms at three resorts operated by Whitecap.  This relationship was

5  terminated more than thirteen years ago.  Except as expressly admitted, Whitecap denies

6  the remaining allegations of Paragraph 17 of the Complaint.

7       18.    Whitecap admits that, between the early 2000s and 2009, it permitted

8  Vacation Store to sell rooms at three resorts operated by Whitecap.  This relationship was

9  terminated more than thirteen years ago.  Except as expressly admitted, Whitecap denies

10  the remaining allegations of Paragraph 18 of the Complaint.

11       19.    Whitecap admits that, between the early 2000s and 2009, it permitted

12  Vacation Store to sell rooms at three resorts operated by Whitecap.  This relationship was

13  terminated more than thirteen years ago.  Except as expressly admitted, Whitecap denies

14  the remaining allegations of Paragraph 19 of the Complaint.

15       20.    Whitecap admits that Plaintiffs registered certain domains containing

16  Whitecap's trademarks but denies any implication that the registration/design of such

17  websites was authorized by Whitecap.  Except as expressly admitted, Whitecap denies the

18  remaining allegations of Paragraph 20 of the Complaint.

19       21.    Whitecap admits that consumers could not "directly book a room" via the at-

20  issue domains.  Each of the at-issue domains resolved to a website that included an

21  "availability" search for rooms and, when a user would input the dates they were interested

22  in visiting, the user would be redirected to skyscanner.com using an affiliate link, which

23  page would promote hotels in competition with Whitecap.  Whitecap does not sell rooms

24  through Skyscanner.  Except as expressly admitted, Whitecap denies the remaining

25  allegations of Paragraph 21 of the Complaint.

26       22.    Whitecap lacks knowledge or information sufficient to form a belief about

27  the truth of the allegations in Paragraph 22 of the Complaint, and therefore denies them.

28       23.    Whitecap lacks knowledge or information sufficient to form a belief about

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-4-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

1  the truth of the allegations in Paragraph 23 of the Complaint, and therefore denies them.

2      24.    Whitecap admits that its business relationship with Vacation Store and/or

3  Plaintiffs had been terminated by the end of 2009.  Thereafter, to the extent Plaintiffs

4  "continued to book rooms at Defendant's hotels and resorts," Plaintiffs did so without

5  Whitecap's endorsement and were not authorized to claim any affiliation with Whitecap in

6  making such sales.  Except as expressly admitted, Whitecap denies the remaining

7  allegations of Paragraph 24 of the Complaint.

8      25.    Whitecap admits that it filed a UDRP complaint seeking transfer of the five

9  identified domains from Plaintiffs to Whitecap.  Except as expressly admitted, Whitecap

10  denies the remaining allegations of Paragraph 25 of the Complaint.

11      26.    Whitecap admits that the UDRP decision ordered transfer of the five at-issue

12  domains from Plaintiffs to Whitecap.  Except as expressly admitted, Whitecap denies the

13  remaining allegations of Paragraph 26 of the Complaint.

14      27.    Whitecap denies the allegations in Paragraph 27 of the Complaint.

15      28.    Whitecap denies the allegations in Paragraph 28 of the Complaint.

16      29.    Whitecap denies the allegations in Paragraph 29 of the Complaint.

17                              **COUNT I**

18                          **TRIAL *DE NOVO***

19      30.    Whitecap admits the allegations in Paragraph 30 of the Complaint.

20      31.    Whitecap admits that the UDRP decision ordered transfer of the five at-issue

21  domains from Plaintiffs to Whitecap.  Except as expressly admitted, Whitecap denies the

22  remaining allegations of Paragraph 31 of the Complaint.

23      32.    Whitecap denies the allegations in Paragraph 32 of the Complaint.

24      33.    Whitecap denies the allegations in Paragraph 33 of the Complaint.

25      34.    Whitecap lacks knowledge or information sufficient to form a belief about

26  the truth of the allegations in Paragraph 34 of the Complaint, and therefore denies them.

27      35.    Whitecap denies the allegations in Paragraph 35 of the Complaint.

28      36.    Whitecap lacks knowledge or information sufficient to form a belief about

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23                    -5-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

the truth of the allegations in Paragraph 36 of the Complaint, and therefore denies them.

37.     Whitecap lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 of the Complaint, and therefore denies them.

38.     Whitecap denies the allegations in Paragraph 38 of the Complaint.

39.     Whitecap denies the allegations in Paragraph 39 of the Complaint.

40.     Whitecap denies the allegations in Paragraph 40 of the Complaint.

41.     Whitecap lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 41 of the Complaint, and therefore denies them.

42.     Whitecap denies the allegations in Paragraph 42 of the Complaint.

43.     Whitecap denies the allegations in Paragraph 43 of the Complaint.

44.     Whitecap denies the allegations in Paragraph 44 of the Complaint.

45.     Whitecap denies the allegations in Paragraph 45 of the Complaint.

46.     Whitecap denies the allegations in Paragraph 46 of the Complaint.

47.     Whitecap denies the allegations in Paragraph 47 of the Complaint.

## COUNT II

## ACTION FOR DECLARATORY RELIEF

48.     Whitecap admits that Plaintiffs' lawsuit seeks relief under the Arizona Uniform Declaratory Judgments Act but denies that Plaintiffs are entitled to any favorable decision thereunder.

49.     Whitecap lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49 of the Complaint, and therefore denies them.

## RESPONSE TO PRAYER FOR RELIEF

Whitecap denies that Plaintiffs are entitled to any of the relief requested.

## AFFIRMATIVE DEFENSES

Subject to the foregoing, Whitecap, for its own separate and affirmative defenses to the Complaint, and without conceding that it bears the burden of proof or persuasion as to any of them, hereby asserts the following affirmative defenses and other defenses. Rocket expressly incorporates the pleadings in its answer above and counterclaims and third-party

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23                                    -6-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

claims below as if fully incorporated herein:

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State Cause of Action)

1.    The Complaint and the purported claims contained therein fail to state facts sufficient to constitute a cause of action against Whitecap.  Among other things, "trial de novo" is not a cognizable cause of action.

## SECOND AFFIRMATIVE DEFENSE

### (Unclean Hands)

2.    Plaintiffs' claims are barred and/or limited pursuant to the doctrine of unclean hands.  As alleged in Whitecap's Counterclaims, *infra*, Plaintiffs' actions constitute, *inter alia*, unfair competition and trademark infringement.

## THIRD AFFIRMATIVE DEFENSE

### (Invalid Trademark Registrations)

3.    Plaintiffs' claims are barred and/or limited to the extent that they rely on federal or state trademarks and/or registrations that have been abandoned and/or fraudulently registered within the United States Patent and Trademark Office.

## FOURTH AFFIRMATIVE DEFENSE

### (Statute of Limitations)

4.    Plaintiffs' claims are barred and/or limited pursuant to the applicable statute of limitations.  At the time of registration of the five at-issue domains, Plaintiffs knew or should have known that there was an actual controversy regarding their use of the same. Plaintiffs registered the at-issue domains by the end of 2015.  In 2012, Whitecap had notified Plaintiffs via initiation of an earlier UDRP proceeding that it neither authorizes nor consents to their use of Whitecap's trademarks in their domains.

## FIFTH AFFIRMATIVE DEFENSE

### (Laches)

5.    Plaintiffs may have known, or should have known, of the matters alleged in the Complaint for an unreasonably long period of time prior to commencement of this

Rutan & Tucker, LLP
*attorneys at law*

2945/102450-0002
19887670.3 a11/13/23

-7-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

litigation.  At the time of registration of the five at-issue domains, Plaintiffs knew or should have known that there was an actual controversy regarding their use of the same. Thus, Plaintiffs' claims are barred by the doctrine of laches.

## ADDITIONAL DEFENSES

6.      Whitecap asserts the above defenses based on its present knowledge, which is based on its investigation to date and an absence of discovery.  Whitecap hereby alleges that there may be additional affirmative defenses to Plaintiffs' alleged claims, which are currently unknown to Whitecap, and Whitecap therefore reserves the right to supplement or amend its answer and to add defenses that may be supported by facts revealed through discovery and or its investigation.

## WHITECAP'S PRAYER FOR RELIEF

WHEREFORE, Whitecap respectfully requests,

1.      That Plaintiffs take nothing by their Complaint, and that the Court enter judgment in Whitecap's favor dismissing the Complaint with prejudice;

2.      That Whitecap be awarded its reasonable expenses and costs of suit herein;

3.      That Whitecap be awarded its attorneys' fees pursuant to all applicable statutes and otherwise, including the Lanham Act; and

4.      Such other and further relief as this Court deems just and proper.

Dated:  November 13, 2023                         RUTAN & TUCKER, LLP


                                                  By: _Lisa N. Neal_____
                                                       Lisa N. Neal
                                                       Attorneys for Defendant and
                                                       Counterclaimant
                                                       Whitecap Bay Investments, B.V.

//

//

//

Rutan & Tucker, LLP
attorneys at law
2945/102450-0002
19887670.3 a11/13/23                              -8-                    DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

1

**DEMAND FOR JURY TRIAL**

2      Whitecap demands a trial by jury on all issues so triable.

3

4  Dated:  November 13, 2023                    RUTAN & TUCKER, LLP

5

6                                         By: _Lisa N. Neal_____

7                                            Lisa N. Neal
                                            Attorneys for Defendant and
8                                           Counterclaimant
                                            Whitecap Bay Investments, B.V.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Rutan & Tucker, LLP**
*attorneys at law*

2945/102450-0002
19887670.3 a11/13/23                         -9-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

## **WHITECAP'S COUNTERCLAIMS**

Counterclaimant Whitecap Bay Investments, B.V. ("Whitecap" or "Counterclaimant") hereby counterclaims and alleges, upon knowledge as to its own acts and investigation, and upon information and belief as to all other matters, against Counter-Defendants Media Insight Group, Inc. ("Media Insight") and George Alvarez ("Alvarez"; together, "Counter-Defendants") as follows:

## **NATURE OF THE CASE**

1.     Whitecap is the owner and operator of the Excellence Group of Luxury Hotels and Resorts, which includes the chain of Excellence Resorts, Finest Resorts, and Beloved Hotels.  From the early 2000s until 2009, Whitecap allowed Counter-Defendants to sell rooms at three resorts operated by under Whitecap's EXCELLENCE Marks, i.e.: Excellence Playa Mujeres, Excellence Punta Cana, and Excellence Riviera Cancun.  Due to performance and business issues, that relationship was terminated by end of 2009.

2.     Whitecap later discovered that Counter-Defendants registered a handful of domains incorporating Whitecap's trademarks and feigning affiliation with Whitecap, as those domains began to appear prominently in internet searches for Whitecap's resorts. Whitecap also discovered that Counter-Defendants registered some of these domains as trademarks with the United States Patent and Trademark Office ("USPTO").  Counter-Defendants have not been affiliated with Whitecap for more than thirteen years, and Whitecap never authorized Counter-Defendants to undertake the foregoing actions.

3.     Accordingly, on March 29, 2023, Whitecap filed a complaint per the Uniform Domain Name Dispute Resolution Policy ("UDRP"), approved by the Internet Corporation for Assigned Names and Numbers ("ICANN") on October 24, 1999, Case No. D2023-1376 (the "UDRP Proceeding").  The Panel for the World Intellectual Property Organization ("WIPO") Arbitration and Mediation Center decided to transfer Counter-Defendants' domains to Whitecap (the "UDRP Decision"), holding that: "Respondent is unable to establish either express or implied consent on the part of the Complainant to the registration of the disputed domain names," and "Respondent is using the disputed domain

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23                -10-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

names misleadingly to divert the Complainant's customers or potential customers to its own websites by causing confusion between the disputed domain names and the Complainant's trademarks and the names of its resorts and hotels."

4.    Via their Complaint, Counter-Defendants seek to disturb the UDRP Decision for sake of reclaiming their infringing domains. Thus, Whitecap brings these Counterclaims to protect its valuable intellectual property rights. Whitecap seeks injunctive and monetary relief in this action for false designation of origin, unfair competition under the common law and California Business and Professions Code § 17200 *et seq*., cancellation of federal trademark registration, unfair competition and trademark infringement under Sections 32(1) and 43(a) of the Trademark Act of 1946 as amended, 15 U.S.C. § 1051 *et seq*. (the "Lanham Act"), and cybersquatting under Section 43(d) of the Lanham Act.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction over this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331, 1332(a), and 1338(a) and (b), and pursuant to the principles of supplemental jurisdiction under 28 U.S.C. § 1367.

6.    The Court has personal jurisdiction over Counter-Defendants because, among other reasons, Counter-Defendants waived any potential personal jurisdiction defense by initiating this action in the Superior Court of the State of Arizona, County of Maricopa, which this District embraces. The Court also has personal jurisdiction over Counter-Defendants because, on information and belief, they conduct business in this District.

7.    Venue lies in this Court pursuant to 28 U.S.C. §§ 1441(a), 1446(a), because this action was originally brought in the Superior Court of the State of Arizona, County of Maricopa, which this District embraces.

8.    Furthermore, venue is proper in this District under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events and omissions giving rise to the counterclaim occurred in this District, as the implicated registrar is located within this District. Moreover, on

Rutan & Tucker, LLP
*attorneys at law*

2945/102450-0002
19887670.3 a11/13/23                    -11-                    DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

information and belief, Counter-Defendants have targeted individuals residing in this District with their unauthorized use of Whitecap's marks, resulting in consumer confusion and irreparable harm to Whitecap.

**PARTIES**

9.      Counterclaimant Whitecap Bay Investments B.V. is a Besloten Vennotschap formed under the laws of the country of The Netherlands, with its principal place of business located in The Netherlands.

10.      On information and belief, Counter-Defendant George Alvarez is an individual who is residing in the State of Florida.  On information and belief, Alvarez is the president and principal of Media Insight, and he maintains more than 100 trademark registrations with the USPTO for domains incorporating the names of hotels that he neither owns nor operates.

11.      On information and belief, Counter-Defendant Media Insight Group, Inc. is a corporation that is incorporated in the State of Florida, with its principal place of business in Broward County, Florida.  On information and belief, Media Insight does business in the State of Arizona.  Media Insight operates a website, www.mediainsightgroup.com, accessible to consumers in Arizona, through which it advertises its "domain leasing program."  Media Insight's website touts owning "over 3,500 operating web sites," and provides a few dozen examples.  All of the example domains incorporate the names of hotels that it does not own (five of which are owned by Whitecap).  Per Media Insight, "Businesses can lease our premium domain names, which obtain 1st page organic rankings within the 3 major search engines[.]"

**FACTUAL ALLEGATIONS**

**Whitecap's Business**

12.      Whitecap is the owner and operator of the Excellence Group of Luxury Hotels and Resorts, which includes the chain of Excellence Resorts, Finest Resorts, and Beloved Hotels.  Whitecap has operated resorts under its EXCELLENCE mark for over twenty years, opening its resorts in 2001 (in Punta Cana), 2004 (in Riviera Cancun), 2007

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-12-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

(in Playa Mujeres), 2016 (in El Carmen), and 2018 (at Oyster Bay).  Whitecap has operated resorts under the BELOVED mark since 2009, when it opened its resort in Playa Mujeres.  Whitecap has operated resorts under the FINEST mark since 2015 when it opened another resort in Playa Mujeres and, later, another resort in Punta Cana.  Thus, Whitecap has long-standing common law rights in its EXCELLENCE, BELOVED, and FINEST marks (the "Common Law Marks") in connection with hotel services.

13.    For more than twenty years, Whitecap has advertised its resorts throughout the United States, resulting in their immense popularity with travelers from the United States.  Whitecap also owns domain names corresponding to each of its resort chains and each of its resorts, through which it promotes its hotel services and offers reservation bookings to consumers, among other things.  Whitecap's resorts enjoy an outstanding reputation.  By way of illustration, Whitecap's Excellence Playa Mujeres resort has a 5-star rating on Tripadvisor.com with more than 26,000 consumer reviews.  Its other resorts are just as highly-rated across crowd-sourced reviews and reviews of professional critics.

14.    Given its longstanding use of the Common Law Marks in connection with resorts, Whitecap owns trademark registrations within the United States and throughout the world, including but not limited to the following design marks registered with the USPTO for use in connection with, *inter alia*, hotel services (the "Registered Marks"):

| Reg. No. | Mark |
| --- | --- |
| 5,735,692 | EXCELLENCE GROUP Luxury Hotels & Resorts |
| 5,797,012 | EXCELLENCE PLAYA MUJERES Mexico |
| 5,797,017 | EXCELLENCE PUNTA CANA Dominican Republic |

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-13-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

| Reg. No. | Mark |
|---|---|
| 5,968,209 |  |
| 5,997,604 |  |
| 5,797,016 |  |
| 6,065,286 |  |
| 6,211,834 |  |
| 6,273,402 |  |

Whitecap owns a number of other federal trademark registrations for its resorts, which are omitted here for sake of conciseness.

15.    As shown above, many of Whitecap's Registered Marks incorporate a floral design, and Whitecap also owns registrations for this standalone design for use in connection with, *inter alia*, hotel services, including but not limited to the following:

| Reg. No. | Mark |
|---|---|
| 5,778,780 |  |

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-14-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

| Reg. No. | Mark |
|----------|------|
| 6,048,908 |  |

**Counter-Defendants' Infringing Domains**

16.    Between the early 2000s and 2009, Whitecap allowed Counter-Defendants to sell rooms at three resorts operated by Whitecap under Whitecap's EXCELLENCE Marks: Excellence Playa Mujeres, Excellence Punta Cana, and Excellence Riviera Cancun.  Due to performance and business issues, that relationship was terminated in 2009.  With the termination of the relationship, no affiliation existed between Whitecap and Counter-Defendants after 2009.  Moreover, upon said termination, Counter-Defendants had no authorization to use Whitecap's intellectual property for their own advantage.

17.    Recently, however, Whitecap discovered that a handful of domains registered by Counter-Defendants prominently appeared in Internet searches for its resorts. These five domains incorporate Whitecap's Common Law Marks in their entirety, adding geographic terms specific to Whitecap's individual resorts, as included in the Registered Marks:   <belovedplayamujeresresort.com>; <excellenceelcarmenpuntacana.com>; <excellenceoysterbayresort.com>; <finestresortpuntacana.com>; and <finestresortplayamujeres.com> (together, the "Infringing Domains").  Whitecap did not authorize Counter-Defendants to register any of the Infringing Domains.  In fact, with the exception of <excellenceoysterbayresort.com>, Counter-Defendants registered the Infringing Domains more than five years after termination of the Parties' relationship, with <finestresortplayamujeres.com> registered on October 10, 2014, and the rest following.

18.    Counter-Defendants could not have reasonably believed that they were authorized to register the Infringing Domains.  In 2012, i.e., years before Counter-Defendants' registration of four of the five Infringing Domains, Whitecap initiated an UDRP proceeding, *Excellence Resorts N.V. v. Media Insight*, Case No. D2012-2497,

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23                    -15-                    DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

through which Whitecap formally objected to Counter-Defendants' use of its marks in their domains.  Thus, Counter-Defendants knew that Whitecap objected to their registration of domains incorporating Whitecap's marks.

19.     Although Counter-Defendants registered <excellenceoysterbayresort.com> in 2006, they did so without the authorization of Whitecap.  The Parties never had any business relationship in regard to Whitecap's Oyster Bay resort, which opened a decade after termination of that relationship.  Whitecap is informed and believes that Counter-Defendants registered this domain back in 2006 because, around this time, Whitecap touted its plan to open a resort in Oyster Bay.  For example, some of Whitecap's representatives included a notation in their email signature blocks indicating that an Oyster Bay resort was "coming soon," which Counter-Defendants may have seen in corresponding with those representatives.  Thus, Whitecap is informed and believes that Counter-Defendants registered the domain in a preemptive, bad faith maneuver.

20.     Clearly, Counter-Defendants intend for the Infringing Domains to confuse consumers.  Each of the Infringing Domains links to a website bearing photographs of Whitecap's resorts, which is plainly styled to mimic Whitecap's true website, including use of a highly similar font for the EXCELLENCE, BELOVED, and FINEST trademarks. In fact, several of the websites feature or had featured Whitecap's Registered Marks beside Counter-Defendants' contact information, as shown below:

        a.       <excellenceelcarmenpuntacana.com>

EXCELLENCE  EL CARMEN
Dominican Republic

Excellence El Carmen
Adults Only All Inclusive
Punta Cana, Dominican Republic
1 (888) 774 0040 or (305) 774 0040

        b.       <excellenceoysterbayresort.com>

EXCELLENCE
OYSTER BAY
Jamaica

ExcellenceOysterBayResort.com

Excellence Oyster Bay Resort
Excellence Oyster Bay All Inclusive
Montego Bay, Jamaica
1 (888) 774 0040 or (305) 774 0040

        c.       <finestresortplayamujeres.com>


PLAYA MUJERES, MEXICO

Finest Playa Mujeres
FinestResortPlayaMujeres®
All Inclusive Family Resort - Mexico
1 (888) 774 0040 or (305) 774 0040

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-16-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

21.     On information and belief, Counter-Defendants registered the Infringing Domains to target Whitecap's marks and mislead consumers regarding their association with Whitecap.  The websites located at Infringing Domains include photographs of Whitecap's hotels and are designed to mimic the aesthetic of Whitecap's true websites, including use of similar fonts and Whitecap's marks.  Tellingly, at the bottom of each website is the names of Whitecap's other resorts, which hyperlink to the other Infringing Domains.  This is a clear attempt by Counter-Defendants to lead consumers to believe that it is, in fact, Whitecap, when no present affiliation exists between the Parties.

22.     Counter-Defendants exploit Whitecap's marks for sake of their own profit. Each of the Infringing Domains resolves to a website that mimics Whitecap's website and includes an "availability" search for rooms.  When a user inputs the dates for which they are interested in visiting, the user is redirected to skyscanner.com using an affiliate link. The Skyscanner page - to which users are redirected - promotes hotels in direct competition with Whitecap, stating that Whitecap's resorts are "sold out" (Whitecap does not sell rooms through Skyscanner).  Essentially, Counter-Defendants are economically profiting by using Whitecap's marks to redirect business to competitors while earning affiliate/referral fees from such redirection.

23.     Evidencing Counter-Defendants' bad faith in registering Infringing Domains, Counter-Defendants sought to profit from their wrongful acts.  Upon learning of Counter-Defendants' registration of the Infringing Domains, Whitecap offered $5,000 for transfer of the Infringing Domains (which should approximate the amount paid for such domains). Counter-Defendants requested $200,000, noting that they had others interested in the domains.  Later, Counter-Defendants again contacted Whitecap's counsel, this time asking for $295,000.

**Counter-Defendants' Trademark Registrations**

24.     Around the time Counter-Defendants registered the Infringing Domains, Alvarez obtained the trademark registrations from the USPTO for three of the five Infringing Domains: BELOVEDPLAYAMUJERESRESORT.COM (U.S. Reg. No.

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-17-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

4,831,370); FINESTRESORTPLAYAMUJERES.COM (U.S. Reg. No. 4,721,873); and FINESTRESORTPUNTACANA.COM (U.S. Reg. No. 4,957,709).  On information and belief, Counter-Defendants only use these marks in connection with the Infringing Domains, redirecting Whitecap's business to competitors in exchange for referral fees.

25.    On May 29, 2023, however, the UDRP Decision issued, ordering the transfer of the Infringing Domains to Whitecap.  A true and correct copy of the UDRP Decision is attached hereto as **<u>Exhibit A</u>**.  Because Counter-Defendants only use the marks cited in the preceding paragraph in connection with the Infringing Domains and their associated redirection scheme, upon implementation of the UDRP decision, Counter-Defendants will have no ability to resume any legitimate use of these marks.  Thus, these marks will have lost all capacity as a source indicator for Counter-Defendants' purported services, rendering such marks abandoned.

26.    In addition to the marks listed in Paragraph 24, Alvarez owns additional trademark registrations for other domains incorporating Whitecap's marks, although Whitecap never authorized his registration/use of the same.  These marks include: EXCELLENCERIVIERAMAYA.COM (U.S. Reg. No. 3,821,826); EXCELLENCEPLAYAMUJERESRESORT.COM (U.S. Reg. No. 5,086,806); and EXCELLENCERESORTPUNTACANA.COM (U.S. Reg. No. 3,844,935).  These marks, like those listed previously, misrepresent the source of Counter-Defendants' services as emanating from Whitecap, when Whitecap has no affiliation with the services provided by Counter-Defendants.  Based on the facts alleged above, it is apparent that Counter-Defendants deliberately seek to pass off their services as emanating from Whitecap, when it is actually redirecting potential travelers to Whitecap's competitors.

27.    Nevertheless, in applying to obtain each of the six trademark registrations identified in Paragraphs 24 and 26, Alvarez declared under penalty of perjury, as follows:

"The signatory believes that to the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be

Rutan & Tucker, LLP
*attorneys at law*

2945/102450-0002
19887670.3 a11/13/23

-18-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

1    likely, when used on or in connection with the goods/services of such other persons,

2    to cause confusion or mistake, or to deceive."

3    However, on information and belief, Alvarez selected these trademarks with the intent to

4    cause consumer confusion, knowing that Whitecap had an interest in said marks, rendering

5    his declaration false and his registrations fraudulently obtained.

6         28.    Indeed, in the UDRP Decision (*see* Exhibit A), the Panel found:

7    "Respondent is using the disputed domain names misleadingly to divert the Complainant's

8    customers or potential customers to its own websites by causing confusion between the

9    disputed domain names and the Complainant's trademarks and the names of its resorts and

10   hotels," and "the Respondent's websites to be similarly deceptive in nature, as suggesting

11   that they are official websites of the resorts or hotels in question and therefore under the

12   Complainant's control."  Thus, it is apparent that Counter-Defendants seek to pass off their

13   services as emanating from Whitecap for sake of diverting consumers from Whitecap's

14   legitimate websites and thereby earning referral fees.

15        29.    Plainly, Counter-Defendants registered their trademarks and Infringing

16   Domains for sake of profiting from consumer confusion.  Counter-Defendants have

17   engaged in a pattern of such conduct, owning 117 federal trademark registrations for

18   domains incorporating the names of hotels that they neither own nor operate.  More than

19   30 UDRP proceedings have been filed against Counter-Defendants, in addition to several

20   federal lawsuits for actions similar to those alleged herein.

21        30.    Counter-Defendants' use and registration of Whitecap's marks constitute

22   trademark infringement and unfair competition.  This use and registration are likely to

23   cause confusion in the minds of the consuming public, with Whitecap's customers and

24   potential customers likely to be confused that Counter-Defendants are affiliated with

25   Whitecap and/or its services, when they are not.  Such confusion has damaged and is

26   continuing to damage Whitecap.  All of the foregoing has resulted in lost bookings for

27   Whitecap, in addition to reputational harm and other economic loses, including, without

28   limitation, lost revenues and lost profits.

Rutan & Tucker, LLP
*attorneys at law*

2945/102450-0002
19887670.3 a11/13/23

-19-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

**FIRST COUNTERCLAIM**

**(Cancellation of U.S. Trademark Registration Nos. 4,721,873, 4,831,370, 4,957,709**

**Based on Abandonment and/or Non-Use [15 U.S.C. § 1064(3)])**

31.     Whitecap realleges and incorporates by reference the foregoing factual allegation as if set forth fully herein.

32.     Under 15 U.S.C. § 1064(3), a registration can be canceled at any time if the registered mark has been "abandoned."

33.     On information and belief, the trademarks registered with U.S. Reg. Nos. 4,721,873, 4,831,370, and 4,957,709 have lost all capacity as source indicators, as the UDRP Decision ordered the Infringing Domains transferred to Whitecap, and the identified trademarks are solely used in connection with the Infringing Domains.  Thus, implementation of the UDRP Decision will entail abandonment of the registered marks, and the registrations should be cancelled per 15 U.S.C. § 1064(3).

34.     As such, Whitecap petitions this Court for cancellation of U.S. Trademark Reg. Nos. 4,721,873, 4,831,370, and 4,957,709, owned by Alvarez, without which Whitecap will be damaged by Counter-Defendants' continued bad faith acts.

**SECOND COUNTERCLAIM**

**(Cancellation of U.S. Trademark Registration Nos. 3,821,826, 3,844,935, 4,721,873,**

**4,831,370, 4,957,709, 5,086,806 Based on Misrepresentation of Source**

**[15 U.S.C. § 1064(3)])**

35.     Whitecap realleges and incorporates by reference the foregoing factual allegation as if set forth fully herein.

36.     Under 15 U.S.C. § 1064(3), a registration can be canceled at any time if the registered mark is being used by, or with the permission of, the registrant so as to misrepresent the source of the services in connection with which the mark is used.

37.     On information and belief, the trademarks registered with U.S. Reg. Nos. 3,821,826, 3,844,935, 4,721,873, 4,831,370, 4,957,709, and 5,086,806 have been registered and used by Counter-Defendants in a deliberate attempt to pass off their services

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-20-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

as originating from Whitecap, when they do not.  Because Counter-Defendants are deliberately using the identified trademarks to mislead consumers, the registrations for said trademarks should be cancelled per 15 U.S.C. § 1064(3).

38.    As such, Whitecap petitions this Court for cancellation of U.S. Trademark Reg. Nos. 3,821,826, 3,844,935, 4,721,873, 4,831,370, 4,957,709, and 5,086,806, owned by Alvarez, without which Whitecap will be damaged by Counter-Defendants' continued bad faith acts.

## THIRD COUNTERCLAIM

**(Cancellation of U.S. Trademark Registration Nos. 3,821,826, 3,844,935, 4,721,873, 4,831,370, 4,957,709, 5,086,806 Based on Fraud [15 U.S.C. § 1064(3)])**

39.    Whitecap realleges and incorporates by reference the foregoing factual allegation as if set forth fully herein.

40.    Under 15 U.S.C. § 1064(3), a registration can be canceled at any time if the "registration" of the mark "was obtained fraudulently."

41.    On information and belief, the trademarks registered with U.S. Reg. Nos. 3,821,826, 3,844,935, 4,721,873, 4,831,370, 4,957,709, and 5,086,806 were registered fraudulently.  Despite knowledge of Whitecap's superior trademark rights, Alvarez declared under penalty of perjury in his trademark applications: "The signatory believes that to the best of the signatory's knowledge and belief, no other persons, except, if applicable, concurrent users, have the right to use the mark in commerce, either in the identical form or in such near resemblance as to be likely, when used on or in connection with the goods/services of such other persons, to cause confusion or mistake, or to deceive."  The submission of this false declaration constitutes fraud on the USPTO.

42.    As such, Whitecap petitions this Court for cancellation of U.S. Trademark Reg. Nos. 3,821,826, 3,844,935, 4,721,873, 4,831,370, 4,957,709, and 5,086,806, owned by Alvarez, without which Whitecap will be damaged by Counter-Defendants' continued bad faith acts.

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-21-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

### FOURTH COUNTERCLAIM

**(Violation of the Anti-Cybersquatting Consumer Protection Act [15 U.S.C. § 1125(D)])**

43.    Whitecap realleges and incorporates by reference the foregoing factual allegation as if set forth fully herein.

44.    Whitecap owns all rights in and to the Common Law Marks and the Registered Marks, which marks are strong and distinctive, and were strong and distinctive as of the date that Counter-Defendants registered the Infringing Domains.

45.    Counter-Defendants registered and use the Infringing Domains, which are confusingly similar to Whitecap's marks.

46.    Upon information and belief, Counter-Defendants use the Infringing Domains, which are confusingly similar to Whitecap's marks, to divert internet users looking for Whitecap to Counter-Defendants' websites.  Upon further information and belief, Counter-Defendants registered and use the Infringing Domains with bad faith intent to financially profit from the use of Whitecap's marks, by diverting Whitecap's consumers to skycanner.com and demanding nearly $300,000 in exchange for transfer of the Infringing Domains.  Counter-Defendants have made no bona fide, non-infringing, commercial use or fair non-commercial use of the Infringing Domains.

47.    Counter-Defendants' conduct is directly and proximately causing substantial, immediate, and irreparable harm and injury to Whitecap, and to its goodwill and reputation, and will continue to damage Whitecap unless enjoined by this Court.  Whitecap has no adequate remedy at law.

48.    Whitecap is entitled to injunctive relief pursuant to 15 U.S.C. §§ 1116 and 1125(d)(1)(C), including, among other injunctive relief, transfer of the Infringing Domains to Whitecap, per the UDRP Decision.  Whitecap seeks issuance of an Order affirming the UDRP Decision, per 15 U.S.C. § 1114(2)(D)(v).

49.    Whitecap is further entitled to recover its damages and Counter-Defendants' profits, enhanced as the Court deems appropriate and equitable, in amounts to be proven at

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-22-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

trial, pursuant to 15 U.S.C. § 1117(a).  Alternatively, Whitecap is entitled to maximum statutory damages in the amount of $100,000 for each Infringing Domain pursuant to 15 U.S.C. § 1117(d).  Whitecap is further entitled to recover its attorneys' fees and costs, together with prejudgment and post-judgment interest.

## FIFTH COUNTERCLAIM

### (Infringement of Registered Trademarks [15 U.S.C. § 1114])

50.    Whitecap realleges and incorporates by reference the foregoing factual allegation as if set forth fully herein.

51.    Whitecap owns the Registered Marks.  These distinctive design marks are used in connection with Whitecap's hotel services.

52.    Counter-Defendants used these Registered Marks, or marks confusingly similar thereto, on the websites for their Infringing Domains, as alleged in Paragraph 20. Counter-Defendants used these marks without authorization from Whitecap.

53.    Counter-Defendants' unauthorized use in commerce of said marks likely deceived consumers as to the origin, source, sponsorship, or affiliation of Counter-Defendants' services, and likely caused consumers to believe, contrary to fact, that Counter-Defendants' services are sold, authorized, endorsed, or sponsored by Whitecap, or that Counter-Defendants are in some way affiliated with or sponsored by Whitecap. Counter-Defendants' conduct therefore constitutes trademark infringement in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

54.    Upon information and belief, Counter-Defendants committed the foregoing acts of infringement with full knowledge of Whitecap's prior rights in the marks and with the willful intent to cause confusion and trade on Whitecap's goodwill.

55.    Counter-Defendants' conduct is causing immediate and irreparable harm and injury to Whitecap, and to its goodwill and reputation, and will continue to both damage Whitecap and confuse the public unless enjoined by this court.  Whitecap has no adequate remedy at law.

56.    Whitecap is entitled to, among other relief, injunctive relief and an award of

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-23-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

actual damages, Counter-Defendants' profits, enhanced damages and profits, reasonable

attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15

U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

### SIXTH COUNTERCLAIM

**(Infringement of Registered Trademarks [15 U.S.C. § 1125(a)])**

57.    Whitecap realleges and incorporates by reference the foregoing factual

allegation as if set forth fully herein.

58.    Whitecap has long-standing trademark rights in the Common Law Marks for

use in connection with hotel services.  Whitecap began use of the Common Law Marks in

commerce before Counter-Defendants began any competing use of the same.  For more

than twenty years, Whitecap has offered hotel-related services under its marks and

advertised such services throughout the United States.  As a result of these efforts,

Whitecap's marks have become distinctive and garnered considerable goodwill.

59.    Counter-Defendants have used Whitecap's Common Law Marks in

connection with competing hotel services, without the authorization of Whitecap.

60.    Counter-Defendants' unauthorized use in commerce of these marks is likely

to deceive consumers as to the origin, source, sponsorship, or affiliation of Counter-

Defendants' services, and is likely to cause consumers to believe, contrary to fact, that

Counter-Defendants' services are sold, authorized, endorsed, or sponsored by Whitecap, or

that Counter-Defendants are in some way affiliated with or sponsored by Whitecap.

Counter-Defendants' conduct therefore constitutes trademark infringement in violation of

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

61.    Upon information and belief, Counter-Defendants have committed the

foregoing acts of infringement with full knowledge of Whitecap's prior rights in the

Common Law Marks and with the willful intent to cause confusion and trade on

Whitecap's goodwill.

62.    Counter-Defendants' conduct is causing immediate and irreparable harm and

injury to Whitecap, and to its goodwill and reputation, and will continue to both damage

Rutan & Tucker, LLP
*attorneys at law*

2945/102450-0002
19887670.3 a11/13/23

-24-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

Whitecap and confuse the public unless enjoined by this court.  Whitecap has no adequate remedy at law.

63.    Whitecap is entitled to, among other relief, injunctive relief and an award of actual damages, Counter-Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## SEVENTH COUNTERCLAIM

### (False Designation of Origin and Unfair Competition [15 U.S.C. § 1125(a)])

64.    Whitecap realleges and incorporates by reference the foregoing factual allegation as if set forth fully herein.

65.    Counter-Defendants' unauthorized use in commerce of Whitecap's marks as alleged herein is likely to deceive consumers as to the origin, source, sponsorship, or affiliation of Counter-Defendants' services, and is likely to cause consumers to believe, contrary to fact, that Counter-Defendants' services are sold, authorized, endorsed, or sponsored by Whitecap, or that Counter-Defendants are in some way affiliated with or sponsored by Whitecap.

66.    Counter-Defendants' unauthorized use in commerce of Whitecap's marks as alleged herein constitutes use of a false designation of origin and misleading description and representation of fact.

67.    Upon information and belief, Counter-Defendants' conduct as alleged herein is willful and is intended to and is likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Counter-Defendants with Whitecap.

68.    Counter-Defendants' conduct as alleged herein constitutes unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

69.    Counter-Defendants' conduct as alleged herein is causing immediate and irreparable harm and injury to Whitecap, and to its goodwill and reputation, and will continue to both damage Whitecap and confuse the public unless enjoined by this Court. Whitecap has no adequate remedy at law.

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23                                    -25-                        DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

70.     Whitecap is entitled to, among other relief, injunctive relief and an award of actual damages, Counter-Defendants' profits, enhanced damages and profits, reasonable attorneys' fees, and costs of the action under Sections 34 and 35 of the Lanham Act, 15 U.S.C. §§ 1116, 1117, together with prejudgment and post-judgment interest.

## EIGHTH COUNTERCLAIM

### (Common Law Trademark Infringement And Unfair Competition)

71.     Whitecap realleges and incorporates by reference the foregoing factual allegation as if set forth fully herein.

72.     Counter-Defendants' actions and conduct as alleged herein are likely to cause confusion, mistake, and deception to consumers as to the affiliation, connection, or association of Counter-Defendants with Whitecap, and as to origin of Counter-Defendants' services, and Whitecap's apparent sponsorship or approval of Counter-Defendants' services.

73.     Counter-Defendants' unauthorized actions and conduct as alleged herein constitute unfair competition under the common law.

74.     Counter-Defendants' unauthorized actions and conduct constitute direct infringements of Whitecap's trademarks in violation of the common law.

75.     Counter-Defendants have caused and, unless restrained and enjoined by this Court, will continue to cause irreparable harm, damage and injury to Whitecap, including but not limited to injury to Whitecap's goodwill and business reputation.

76.     Whitecap has suffered, is suffering, and will continue to suffer irreparable injury for which Whitecap has no adequate remedy at law.  Whitecap is therefore entitled to a permanent injunction against further infringing conduct by Counter-Defendants.

## NINTH COUNTERCLAIM

### (Unfair Competition [Cal. Bus. & Prof. Code § 17200, *et seq*.])

77.     Whitecap realleges and incorporates by reference the foregoing factual allegation as if set forth fully herein.

78.     On information and belief, Counter-Defendants provide services to

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23

-26-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

1  consumers within California, and their Infringing Domains are accessible to California

2  consumers.

3      79.    Counter-Defendants' conduct and actions as alleged herein, including

4  without limitation Counter-Defendants' trademark infringement of Whitecap's mark to

5  divert its customers to competing providers of hotel-related services and to confuse

6  consumers, constitutes unlawful and unfair trade practices and unfair competition in

7  violation of California Business and Professions Code Section 17200, *et seq*. and have no

8  valid or legitimate purpose except to benefit Counter-Defendants at Whitecap's expense.

9      80.    By virtue of its unlawful, unfair and/or fraudulent business acts and practices

10 alleged above, Counter-Defendants have violated numerous engaged in consumer-oriented

11 conduct that is unfair, fraudulent, deceptive and contrary to public policy, which resulted

12 in consumer injury and broad adverse impact on the public at large, and harmed the public

13 interest of the State of California in an honest marketplace in which economic activity is

14 conducted in a competitive manner.

15     81.    Per section 17203, "Any person who engages, has engaged, or proposes to

16 engage in unfair competition may be enjoined in any court of competent jurisdiction."  Cal.

17 Bus. & Prof. Code § 17203.

18     82.    As a direct and proximate result of Counter-Defendants' unfair or deceptive

19 acts or practices, Whitecap is entitled to disgorgement of Counter-Defendants' profits in an

20 amount to be proven at trial pursuant to Cal. Bus. & Prof. Code § 17200.  Because

21 Counter-Defendants are likely to continue with their unlawful conduct absent an

22 injunction, Whitecap is entitled to injunctive relief.

## **PRAYER FOR RELIEF**

24     WHEREFORE, Whitecap prays for an order and entry of judgment against

25 Counter-Defendants, and each of them, as follows:

26     1.    For cancellation of U.S. Trademark Registration Nos. 3,821,826, 3,844,935,

27 4,721,873, 4,831,370, 4,957,709, 5,086,806;

28     2.    For Counter-Defendants and their agents, servants, employees, and those

Rutan & Tucker, LLP
*attorneys at law*

2945/102450-0002
19887670.3 a11/13/23                    -27-                    DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

people in active concert or participation with them to be temporarily, preliminary, and permanently enjoined and restrained from using or infringing Whitecap's Common Law Marks and Registered Marks, or any other confusingly similar mark or name, or in any way falsely suggesting any affiliation or connection with Whitecap;

3.      That Counter-Defendants be required to pay to Whitecap such damages Whitecap has sustained as a consequence of Counter-Defendants' infringement of Whitecap's Common Law Marks and Registered Marks and to account for all gains, profits and advantages derived by Counter-Defendants from the sale of its infringing services, and/or as a result of unjust enrichment, and that the award to Whitecap be trebled as provided for under 15 U.S.C. § 1117;

4.      For disgorgement of profits under Cal. Bus. & Prof. Code § 17200, *et seq*.;

5.      For an award of pre- and post-judgment interest at the highest rate allowed by law;

6.      For an Order transferring the Infringing Domains to Whitecap, per the UDRP decision;

7.      For an award of Whitecap's attorneys' fees, costs and expenses, including but not limited to expert witness fees, incurred in this action; and

8.      For such further relief as this Court shall deem just and proper.

Dated:  November 13, 2023                    RUTAN & TUCKER, LLP


                                             By: _Lisa N. Neal_____
                                                 Lisa N. Neal
                                                 Attorneys for Defendant and
                                                 Counterclaimant
                                                 Whitecap Bay Investments, B.V.




//

//

Rutan & Tucker, LLP
attorneys at law

2945/102450-0002
19887670.3 a11/13/23                         -28-                    DEFENDANT WHITECAP BAY
                                                                     INVESTMENTS, B.V.'S ANSWER AND
                                                                     COUNTERCLAIMS

1

## **DEMAND FOR JURY TRIAL**

2

Whitecap demands a trial by jury on all issues so triable.

3

Dated:  November 13, 2023                    RUTAN & TUCKER, LLP

4

5

By: _Lisa N. Neal_____

6

Lisa N. Neal
Attorneys for Defendant and
Counterclaimant

7

Whitecap Bay Investments, B.V.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Rutan & Tucker, LLP
*attorneys at law*

2945/102450-0002
19887670.3 a11/13/23

-29-

DEFENDANT WHITECAP BAY
INVESTMENTS, B.V.'S ANSWER AND
COUNTERCLAIMS

EXHIBIT A



**ARBITRATION
AND
MEDIATION CENTER**

## ADMINISTRATIVE PANEL DECISION
Whitecap Bay Investments, B.V. v. Media Insight and George Alvarez
Case No. D2023-1376

### 1. The Parties

The Complainant is Whitecap Bay Investments, B.V., Netherlands, represented by Rutan & Tucker, LLP, United States of America ("United States").

The Respondents are Media Insight and George Alvarez, United States, represented by James S. Robertson, III, Esquire, United States.

### 2. The Domain Names and Registrar

The disputed domain names <belovedplayamujeresresort.com>, <excellenceelcarmenpuntacana.com>, <excellenceoysterbayresort.com>, <finestresortplayamujeres.com>, and <finestresortpuntacana.com> are all registered with GoDaddy.com, LLC (the "Registrar").

### 3. Procedural History

The Complaint was filed with the WIPO Arbitration and Mediation Center (the "Center") on March 29, 2023. On March 30, 2023, the Center transmitted by email to the Registrar a request for registrar verification in connection with the disputed domain names.  On March 31, 2023, the Registrar transmitted by email to the Center its verification response disclosing registrant and contact information for the disputed domain name which differed from the originally named Respondent (Domains By Proxy, LLC, Media Insight and George Alvarez) and contact information in the Complaint and naming Media Insight alone as the registrant of the disputed domain names.

The Center verified that the Complaint satisfied the formal requirements of the Uniform Domain Name Dispute Resolution Policy (the "Policy" or "UDRP"), the Rules for Uniform Domain Name Dispute Resolution Policy (the "Rules"), and the WIPO Supplemental Rules for Uniform Domain Name Dispute Resolution Policy (the "Supplemental Rules").

In accordance with the Rules, paragraphs 2 and 4, the Center formally notified the Respondent of the Complaint, and the proceedings commenced on April 6, 2023.  In accordance with the Rules, paragraph 5, the initial due date for Response was April 26, 2023.  Upon the request of the Respondents, this due date was extended to May 1, 2023.  The Response was filed with the Center on May 1, 2023.

The Center appointed Steven A. Maier as the sole panelist in this matter on May 15, 2023. The Panel finds that it was properly constituted. The Panel has submitted the Statement of Acceptance and Declaration of Impartiality and Independence, as required by the Center to ensure compliance with the Rules, paragraph 7.

The Panel determines, for reasons which will be clear from the further discussion below, that both Media Insight and George Alvarez are proper Respondents in this proceeding. The term "Respondent" shall be used interchangeably hereinafter to refer to either or both of those Parties in the remainder of this Decision.


**4. Factual Background**

The Complainant is a company organized under the laws of the Netherlands. It is an operator of hotels and resorts under brand names including "Excellence Resorts", "Finest Resorts" and "Beloved Hotels".

The Complainant is the owner of the following domain names, which were registered on the dates shown below, from which it operates various websites:

- <finestresorts.com>, registered on October 12, 2002
- <excellenceresorts.com>, registered on September 30, 2005
- <belovedhotels.com>, registered on June 27, 2011

The Complainant is the owner of various trademark registrations, the earliest of which the Panel considers to be relevant to this proceeding being as follows:

- European Union Trade Mark registration number 012788592 for a figurative mark FINEST PLAYA MUJERES, registered on August 21, 2014;

- European Union Trade Mark registration number 012788601 for a figurative mark FINEST OYSTER BAY, registered on August 21, 2014;

- European Union Trade Mark registration number 012867008 for a figurative mark EXCELLENCE GROUP LUXURY HOTELS & RESORTS plus a device, registered on September 23, 2014;

- European Union Trade Mark registration number 012928024 for a figurative mark FINEST PUNTA CANA, registered on September 22, 2014;  and

- Brazil trademark registration number 910268835 for a combined mark THE BELOVED HOTEL, registered on February 6, 2018 (with a filing date of November 13, 2015).

Media Insights is a third party broker of hotel and other travel-related services. It trades as (or in conjunction with) The Vacation Store Miami. Mr George Alvarez is the President of Media Insights and the Vice-President of The Vacation Store Miami.

Mr George Alvarez is the owner of various trademark registrations including the following:

- United States trademark registration number 3844935 for a standard character mark EXCELLENCERESORTPUNTACANA.COM, registered on September 7, 2010;

- United States trademark registration number 4721783 for a standard character mark FINESTRESORTPLAYAMUJERES.COM, registered on April 14, 2015;

- United States trademark registration number 4831370 for a standard character mark BELOVEDPLAYAMUJERESRESORT.COM, registered on October 13, 2015;

- United States trademark registration number 4957709 for a standard character mark FINESTRESORTPUNTACANA.COM, registered on May 10, 2016;  and

- United States trademark registration number 5086806 for a standard character mark EXCELLENCEPLAYAMUJERESRESORT.COM, registered on November 22, 2016

The disputed domain names were registered on the dates shown below:

- <belovedplayamujeresresort.com> on October 21, 2014
- <excellenceelcarmenpuntacana.com> on August 4, 2015
- <excellenceoysterbayresort.com> on July 31, 2006
- <finestresortpuntacana.com> on May 31, 2015
- <finestresortplayamujeres.com> on October 10, 2014

Each of the disputed domain names has resolved to a website featuring one of the Complainant's hotels or resorts.  The websites are headed, respectively, "The Beloved Hotel, Playa Mujeres, Mexico";  "Excellence El Carmen";  "Excellence Oyster Bay";  "Finest Playa Mujeres";  and "Finest Punta Cana".  Each website features photographs, information, and a booking facility specific to the hotel or resort in question.  Three of the five websites include the words "Vacation Store Miami ®" above the name of the hotel or resort in question, although this is in smaller type and a feinter grey colour than the name of the hotel or resort.


## 5. Parties' Contentions


### A. Complainant

The Complainant states that it has operated hotels and resorts under the "Excellence" brand since 2001, the "Beloved" brand since 2009 and the "Finest" brand since 2015.  It refers to each of its own domain name registrations, as mentioned above, in connection with each of these brands.

The Complainant submits that, between the early 2000s and 2009, it permitted the Respondent to sell rooms at three of its "Excellence" hotels, namely, "Excellence Playa Mujeres", "Excellence Punta Cana", and "Excellence Riviera Cancun".  It states that its business relationship with the Respondent was, however, terminated in 2009 owing to performance and business issues.  The Complainant submits that all of the disputed domain names, with the exception of <excellenceoysterbayresort.com>, were registered by the Respondent after that business relationship ended and were only discovered by the Complainant by way of Internet searches.

The Complainant submits that the Respondent (whether Media Insight or Mr George Alvarez) is no stranger to cybersquatting proceedings.  It produces a list of 29 proceedings under the UDRP to which it says the Respondent is or has been a party.  It also refers to two United States federal court lawsuits which it says have been brought against the Respondent.

The Complainant highlights, in particular, the findings of the UDRP panel in *EPI Gestion, S.L. v. Media Insight and George Alvaraz*, WIPO Case No. D2019-3416, in which the panel stated:

"[Respondents] identify popular hotels and register a domain name which combines the hotel name or a relevant brand associated with the hotel and a geographic and/or descriptive term... [t]hat domain name is then linked to a website which the Respondents develop which promotes the hotel, but solicits bookings for the hotel through the Respondents as a tour operator.  It seems clear to the Panel that the domain name registrations are undertaken entirely speculatively by the Respondents without the express consent of the relevant hotel owner. The Respondents presumably hope as a matter of business practice that the hotel owner will accept the situation when it discovers it.  It is however clear from the above listing of cases that there are numerous cases where hotel operators have objected to the Respondents' business model.  It would seem that the Respondents have been engaged in this business model since at least 2004.  The

Respondents have also lost a case in the United States District Court which was, as far as the Panel can see, also based on facts arising out of the Respondents use of the business model described above."

The Complainant submits that the Respondent knew of the Complainant's plan to open a resort at Oyster Bay before it registered the disputed domain name <excellenceoysterbayresort.com> because it had seen the plans for that resort mentioned in the Complainant's emails during the course of the Parties' business relationship.  The Complainant submits that the Parties' business relationship did not extend to the Complainant's Oyster Bay resort.

The Complainant submits that each of the disputed domain names is confusingly similar to a trademark in which the Complainant has rights.  It states that the disputed domain names comprise the Complainant's trademarks plus descriptive terms.

The Complainant submits that the Respondent has no rights or legitimate interests in respect of the disputed domain names.  It states that none of them are the names of the Respondent.  It further states that it has never authorized the Respondent to register domain names including the Complainant's trademarks.

With regard to the Respondent's actual use of the disputed domain names, the Complainant submits that each of these resolves to a website which mimics the Complainant's own websites and even uses a similar font to that adopted by the Complainant.  It submits that the Respondent's inclusion of the name "Vacation Store Miami" on some of the websites is insufficient to dispel the impression that each website is in fact owned or operated by the Complainant.

The Complainant further contends that, when attempting to conduct an "availability" search for rooms using the Respondent's websites, the user is redirected to a website at "www.skyscanner.com", which promotes hotels in direct competition to those of the Complainant, stating that the Complainant's hotels are "sold out".  The Complainant states that it does not sell rooms via Skyscanner.  The Complainant exhibits the Skyscanner pages to which it submits an "availability" search on each of the Respondent's websites has redirected.  It claims that the Respondent obtains revenue from the redirection of Internet users via these "affiliate links".

The Complainant notes that Mr George Alvarez is the owner of certain trademark registrations as mentioned above.  It relies in this regard on the findings of the panel in the prior case of *Excellence Resorts N.V. v. Media Insight*, WIPO Case No. D2012-2497, concerning the disputed domain names <excellenceplayamujeresresort.com>, <excellencepuntacanaresort.com> and <excellencerivieracancunresort.com>.  In that case the panel made the following observations:

1.  That the trademarks registered by Mr Alvarez did not correspond in their entirety to any of the disputed domain names in issue;

2.  That the registration of Mr Alvarez's trademarks "looks somewhat suspicious to this Panel";  and

3.  That while it was not for the panel to examine the validity of Mr Alvarez's trademarks, it was open to the panel in weighing the evidence to decide that the registration of Mr Alvarez's trademarks did not of itself confer rights or legitimate interests in respect of the disputed domain names in that case.

The Complainant also submits that the Respondent's activities cannot meet the criteria set out in *Oki Data Americas, Inc. v. ASD, Inc.*, WIPO Case No. D2001-0903, for the legitimate use of a party's trademark by a third party reseller.  It contends that the Respondent's websites do not actually enable Internet users to book the Complainant's rooms, but redirects them instead to offers from the Complainant's competitors.  Further, the Respondent's websites fail accurately to disclose the relationship between the Parties and, in particular, fail to make clear that they are not operated by the Complainant.

The Complainant contends that the disputed domain names were registered and have been used in bad faith.  It submits that there could have been no reason for the Respondent to have registered the disputed

domain names other than to target the Complainant's trademarks. It repeats its submissions as to the Respondent's use of the disputed domain names and contends that the Respondent is attempting to attract Internet users to its websites for commercial gain by creating a likelihood of confusion with the Complainant's marks.

The Complainant also alleges that the Respondent has sought to sell the disputed domain names to the Complainant for "obviously exorbitant purchase prices". It states that it offered the Respondent USD 5,000 for the disputed domain names to which the Respondent responded with an offer of USD 200,000 and subsequently USD 295,000. The Complainant exhibits an email dated March 29, 2021, from its counsel, apparently reporting on an approach from the Respondent's counsel. The email states that Mr Alvarez "has a buyer for his trademark portfolio and that he intends to sell it in approximately one month". The email lists Mr Alvarez's five United States trademarks mentioned in section 4 above, plus EXCELLENCERIVIERAMAYA. It states that, before proceeding with this sale, Mr Alvarez is offering the trademark portfolio to the Complainant for the price of USD 295,000 and that the Complainant's response is awaited.

The Complainant requests the transfer of the disputed domain names.

## B. Respondent

The Respondent objects that the Complainant is effectively seeking to re-litigate the decided case of *Excellence Resorts N.V. v. Media Insight*, WIPO Case No. D2012-2497, referred to above. It points out that the Complainant was in fact unsuccessful in that case. It adds that the Complainant could also have challenged the disputed domain name <excellenceoysterbayresort.com> in that earlier case and that disputed domain name should be regarded as *res judicata* in the circumstances.

The Respondent states that it earns revenue by putting together travel packages. It states that it has a longstanding relationship with the Complainant, going back to 2000, which authorized it to sell the Complainant's hotel rooms. It contends that the websites to which the disputed domain names resolve were both authorized and enabled by the Complainant and that the Respondent has never diverted Internet users to competitors of the Complainant.

The Respondent points out that the trademark registrations upon which the Complainant relies are all for trademarks containing figurative elements. It also exhibits trademark certificates for two of the Complainants' United States trademarks, EXCELLENCE OYSTER BAY, JAMAICA and EXCELLENCE EL CARMEN, D.R., both registered in 2020, which disclaim the terms "Oyster Bay, Jamaica" and "El Carmen, D.R." respectively. The Respondent criticizes the Complainant for failing to provide full information concerning its trademarks. It states that the disputed domain names are neither identical nor confusingly similar to the Complainant's trademarks and that, in any event, it registered the disputed domain names years before the Complainant's registered any relevant trademarks. The Respondent adds that the proper forum for any dispute over the validity of any United States trademark is the United States Patent and Trademark Office and not proceedings under the UDRP.

The Respondent maintains that it has rights or legitimate interests in respect of the disputed domain names. It states that it has a business relationship with the Complainant going back over 20 years and has, throughout that period, operated web pages on the Complainant's behalf. It states (repeatedly in its Response) that the Complainant not only authorized the relevant web pages but also requested various changes to those web pages, provided fact sheets, trademarks, logos and photographs for use in conjunction with them, and even provided funding for the web pages in question.

The Respondent states that, upon the Complainant cancelling its contracts with the Respondent, the Respondent formed an affiliation with a tour operator named GoGo Tours, which itself has contracts with the Complainant and is duly authorized to use the Complainant's intellectual property. The Respondent contends it is authorized to use that intellectual property by virtue of being an affiliate of GoGo Tours and has continued to operate its websites, for the Complainant's benefit, accordingly. It submits that the Complainant

has thereby received, and continues to receive and accept, hotel room reservations emanating from the Respondent.

In support of its contentions set out above, the Respondent exhibits affidavits from Mr George Alvarez and Ms Rosanna Metz-Mendes, who is stated to be the President of Vacation Store.  The affidavit of Ms Metz-Mendez states that, under the business relationship between the Parties, the Complainant provided the Respondent with a link to download material for its websites as well as relevant content and photographs for those websites.  She refers to email communications with the Complainant referring to the websites and to conversations with a sales director of the Complainant in 2008 requesting certain alterations and additions to the websites, which she states were confirmed in an email dated October 28, 2008.  The Panel notes, however, that no evidence of any such emails is exhibited to Ms Metz-Mendes' affidavit, the only exhibits appear to relate to the Respondent's relationship with GoGo Tours.  The only exhibits to Mr Alvarez's affidavit are the certificates relating to his own United States trademarks[1].

The Respondent argues that, the Complainant having clearly acquiesced in the operation of the Respondent's websites, it cannot now deny that the Respondent has rights or legitimate interests in respect of the disputed domain names.  The Respondent contends that it had, as a minimum, reasonable grounds to believe that its use of the disputed domain names was fair and lawful.

The Respondent adds that, the Complainant having initially placed hotel rooms on the market, it cannot (under the "first sale doctrine") constitute an infringement of the Complainant's trademark rights for a third party then to resell those rooms.  The Respondent also argues that its activities fall within the criteria set out in the *Oki Data* case (*supra*) for the legitimate incorporation of the Complainant's trademarks into the disputed domain names.

The Respondent submits that, on the evidence provided, the business relationship between the Parties gives rise, at least, to arguments concerning acquiescence and fair use which must be resolved by a competent court of law as opposed to a panel under the UDRP.

The Respondent denies that the disputed domain names were registered or have been used in bad faith.  It submits that it has no business interest in any hotels as it is only a tour operator.  It denies that its websites have resulted in business being diverted away from the Complainant's hotels and asserts that it could have no commercial interest in any such diversion.  It repeats that the Complainant encouraged it to build and operate its websites.  It states that none of the web pages in question contain links to the Complainant's competitors and that no competitors of the Complainant have benefited from the web pages.

The Respondent states that it does not know how the Complainant arrived at the Skyscanner links to which it refers in the Complaint.  It asserts that the Panel will obtain a "different result" if it attempts to make bookings via the disputed domain names.  It further contends that the Complainant's hotels were shown to be fully booked because that was the case for the dates requested and that if later dates had been requested then the Complainant's hotel rooms would have been offered.

The Respondent describes as "self serving" the email from the Complainant's counsel stating that the Respondent was offering to sell Mr Alvarez's trademark portfolio to the Complainant for USD 295,000.  It states that there are no documents from the Respondent regarding this issue.  It submits that, in any event, it is clear from a reading of the document that it was a sale of the Respondent's trademark portfolio (as opposed to the disputed domain names) that was under discussion.

The Respondent submits that equitable considerations should also inform this matter.  It states that it has spent considerable time and money promoting its web pages over a number of years with the knowledge of

---

[1] The Panel notes, however, that the Complainants' exhibits in this proceeding include the Response in WIPO Case No. D2012-2497 (*supra*).  That Response includes an exhibit comprising two Spanish language emails dated respectively June 3, 2008 and October 28, 2008.  While no translation of those emails is provided, the Respondent submits in that case that each of them contains requests from a representative of the Complainant to the Respondent to update its relevant websites, including increases in prices.

the Complainant and that it would be unjust for the disputed domain names now to be transferred to the Complainant. The Respondent adds that it was incumbent on the Complainant to take active steps to protect its trademarks and that it is now effectively time-barred from objecting to the Respondent's activities.

The Respondent contends that the Complainant has brought this proceeding in bad faith. It states that the Complainant failed to make full disclosure concerning the limitations on its own trademarks and other matters. It contends that the Complainant has misled the Panel about other legal proceedings, including one of the United States federal cases in question which was reversed on appeal. It claims that the Complainant "inserts booking links" in its Complaint which the Panel will not find on the websites in question and that the Complainant's evidence concerning Mr Alvarez's offer to sell his trademark portfolio is "a self-serving internal memo."

## 6. Discussion and Findings

In order to succeed in the Complaint, the Complainant is required to show that all three of the elements set out under paragraph 4(a) of the Policy are present. Those elements are that:

(i)     the disputed domain names are identical or confusingly similar to a trademark or service mark in which the Complainant has rights;
(ii)    the Respondent has no rights or legitimate interests in respect of the disputed domain names;  and
(iii)   the disputed domain names have been registered and are being used in bad faith.

## A. Identical or Confusingly Similar

In addition to its trademark registrations referred to in section 4 above, the Panel finds that the Complainant has used the brands "Excellence", "Beloved" and "Finest" in connection with hotels and resorts since 2001, 2009 and 2015 respectively and has established a level of unregistered trademark rights in those brands accordingly.

The disputed domain name <belovedplayamujeresresort.com> combines distinctive elements from the Complainant's registered trademarks THE BELOVED HOTEL and FINEST PLAYA MUJERES together with the additional term "resort" which does not prevent the Complainant's trademarks from being recognizable within the disputed domain name.

The disputed domain name <excellenceelcarmenpuntacana.com> combines distinctive elements from the Complainant's registered trademarks EXCELLENCE GROUP LUXURY HOTELS & RESORTS and FINEST PUNTA CANA together with the additional term "elcarmen" which does not prevent the Complainant's trademarks from being recognizable within the disputed domain name.

The disputed domain name <excellenceoysterbayresort.com> combines distinctive elements of the Complainant's trademarks EXCELLENCE GROUP LUXURY HOTELS & RESORTS and FINEST OYSTER BAY.

The disputed domain name <finestresortplayamujeres.com> comprises the Complainant's trademark FINEST PLAYA MUJERES together with the insertion of the additional term "resort" which does not prevent the Complainant's trademark from being recognizable within the disputed domain name.

The disputed domain name <finestresortpuntacana.com> comprises the Complainant's trademark FINEST PUNTA CANA together with the insertion of the additional term "resort" which does not prevent the Complainant's trademark from being recognizable within the disputed domain name.

The Panel therefore finds that each of the disputed domain names is confusingly similar to a trademark or trademarks in which the Complainant has rights.

**B. Rights or Legitimate Interests**

The Respondent's principal contention in this proceeding is that its websites to which the disputed domain names resolve were built and operated with the full knowledge, encouragement, and assistance of the Complainant and that the Complainant has benefited from those websites for many years.

While the Respondent refers to numerous emails supposedly evidencing the Complainant's cooperation with the websites in question, including providing links, photographs and content, requesting changes and even providing funding, it is remarkable that no evidence of any such emails or other communications is provided by the Respondent, whether as any exhibit to the Response or to the affidavits of Mr Alvarez or Ms Metz-Mendes, the latter of which is addressed precisely to this subject-matter[2].

The Panel also notes that the consent and cooperation to which the Respondent refers to is said to have taken place during the currency of the Parties' business relationship, which ended in 2009.  In the view of the Panel, even if the Complainant had acquiesced at that time to the Respondent's websites in the manner alleged (at which point of time, the only disputed domain name in possession of the Respondent was <excellenceoysterbayresort.com>), there is no reasonable basis to imply that the Complainant would have intended any such consent to continue beyond the termination of the Parties' business relationship, and certainly not to websites which (as further discussed below) convey the misleading impression to Internet users that they are the Complainant's own websites.

The Panel further notes that, with the exception of <excellenceoysterbayresort.com>, all of the disputed domain names were registered after the business relationship between the Complainant and the Respondent had been terminated, casting further doubt as to the Respondent's claims on the Complainant's alleged acquiescence to the registration and use of the disputed domain names during the currency of the Parties' prior business relationship.  The Panel can see no convincing argument in those circumstances that the disputed domain names were registered to facilitate some ongoing consensual business relationship between the Parties.

In the Panel's view, therefore, the Respondent is unable to establish either express or implied consent on the part of the Complainant to the registration of the disputed domain names.  The Panel specifically rejects the Respondent's contention that its own affiliation with GoGo Tours, being itself affiliated with the Complainant, in some indirect manner authorizes the Respondent to use the Complainant's property.

In these circumstances, the Respondent falls back on the position that, in certain limited circumstances, a reseller of trademarked goods or services may legitimately incorporate that trademark into a domain name used for the resale of the goods or services in question (see, *e.g.*, section 2.8 of the WIPO Overview of WIPO Panel Views on Selected UDRP Questions, Third Edition ("WIPO Overview 3.0") and the *Oki Data* case (*supra*)).  However, the Panel finds that the Respondent is unable to meet the *Oki Data* criteria in this case.  First, the Panel finds the Respondent's websites to be inherently deceptive, as clearly having been designed to give the impression that they are official websites of the hotel or resort in question.  Secondly, the Panel accepts the Complainant's evidence that making enquiries on the websites has resulted in Internet users being redirected to other travel operator websites, including offers from hotels in competition with those of the Complainant.  Thirdly, the websites fail prominently to disclose that their operator, the Respondent, is independent of, and has no affiliation with, the Complainant.

Nor is the Panel persuaded that the Respondent is assisted by the first sale doctrine in circumstances where it is engaging in deceptive conduct concerning the trademarked services.

---

[2] The Panel has, however, noted above the evidence submitted by the Complainant in this proceeding, which includes the Response in the earlier WIPO Case No. D2012-2497 and the emails dated June and October 2018 exhibited thereto.  Those emails do not refer to the disputed domain name <excellenceoysterbayresort.com> and predate both the termination of the Parties' business relationship and the registration of the other four disputed domain names in this proceeding.

The Panel does not find in the circumstances that the Respondent is using the disputed domain names in connection with any *bona fide* offering of goods or services and finds, instead, that the Respondent is using the disputed domain names misleadingly to divert the Complainant's customers or potential customers to its own websites by causing confusion between the disputed domain names and the Complainant's trademarks and the names of its resorts and hotels.

These findings notwithstanding, there remains the question of the Respondent's own United States trademark registrations.  Three of these trademarks, BELOVEDPLAYAMUJERESRESORT.COM, FINESTRESORTPLAYAMUJERES.COM, and FINESTRESORTPUNTACANA.COM are identical to the disputed domain names <belovedplayamujeresresort.com>, <finestresortplayamujeres.com>, and <finestresortpuntacana.com>.

Section 2.12 of WIPO Overview 3.0, headed "Does a respondent trademark corresponding to a domain name automatically generate rights or legitimate interests?" contains the following guidance:

"2.12.1 Panels have recognized that a respondent's prior registration of a trademark which corresponds to a domain name will ordinarily support a finding of rights or legitimate interests in that domain name for purposes of the second element.

2.12.2 The existence of a respondent trademark does not however automatically confer rights or legitimate interests on the respondent.  For example, panels have generally declined to find respondent rights or legitimate interests in a domain name on the basis of a corresponding trademark registration where the overall circumstances demonstrate that such trademark was obtained primarily to circumvent the application of the UDRP or otherwise prevent the complainant's exercise of its rights (even if only in a particular jurisdiction).  Absent evidence of such circumstances indicating pretext however, panels have been reluctant to reject a respondent trademark registration out of hand."

In this case, following the termination of its relationship with the Complainant, the Respondent registered United States trademarks, which can have no conceivable purpose other than to reference the hotels and resorts owned and operated by the Complainant.

Nevertheless, the Panel has some hesitation in determining that the Respondent's three trademarks in question do not confer rights or legitimate interests in respect of the relevant disputed domain names.  The trademarks appear to be duly registered and the Panel has seen no evidence that the Complainant attempted to oppose the registration of the trademarks or to seek subsequently to have them invalidated. Jurisprudence under the UDRP is very clear that it is not for panels under the UDRP to adjudicate matters, which may include the validity or relative merits of trademarks, which are more properly the province of a court of law.

On balance, however, the Panel finds that the facts of this case fall squarely within the *proviso* highlighted in section 2.12.2 of WIPO Overview 3.0, namely, that the trademarks were obtained primarily to circumvent the application of the UDRP or otherwise prevent the Complainant's exercise of its rights.  The Panel does not therefore consider that the Respondent's trademarks registrations confer rights or legitimate interests in respect of the corresponding disputed domain names.  This is not, of course, to make any determination concerning the validity of those trademarks *per se*, but merely to find that, in this particular case, they do not confer rights or legitimate interests for the purposes of the Policy.

The Panel does not accept the Respondent's contentions that it has raised issues of acquiescence and fair use that can only be resolved by court of law and not by the present Panel.

The Panel finds in the circumstances that the Respondent has no rights or legitimate interests in respect of the disputed domain names.

**C. Registered and Used in Bad Faith**

As indicated above, the Panel finds that the Respondent registered all but one of the disputed domain names following the termination of its business relationship with the Complainant and, as in the case of the Respondent's trademarks, the purpose of the disputed domain names can only conceivably be to refer to the Complainant's relevant hotels and resorts.  Clearly, the Respondent was aware of the Complainant and its hotels and resorts at the time it registered the disputed domain names, and the Panel also accepts the Complainant's contention that the Respondent had prior notice of its planned Oyster Bay resort.  From the evidence it appears more likely than not that the Respondent became aware of the Oyster Bay resort and registered the disputed domain name <excellenceoysterbayresort.com> in anticipation thereof, despite the fact that Parties' business relationship did not extend to the Oyster Bay resort at any time and without any evidence provided from the Respondent as to discussions with the Complainant concerning the disputed domain name <excellenceoysterbayresort.com>.

The Panel finds further that the disputed domain names are inherently deceptive and likely to confuse Internet users into believing they are owned or operated by the Complainant, as the owner of the "Excellence", "Beloved" and "Finest" brands and of the specific resorts and hotels to which the disputed domain names refer.  Moreover, as stated above, the Panel finds the Respondent's websites to be similarly deceptive in nature, as suggesting that they are official websites of the resorts or hotels in question and therefore under the Complainant's control.

While the Respondent claims that it does not benefit from any affiliate links that may have been associated with the websites in question, and that no potential customers for the Complainant's rooms have been diverted to any competing hotel, the Panel finds these contentious to be unlikely on the evidence and dismisses them on the balance of probability.

The Panel therefore finds that, by using the disputed domain names, the Respondent has intentionally attempted to attract, for commercial gain, Internet users to its websites by creating a likelihood of confusion with the Complainant's trademarks as to the source, sponsorship, affiliation, or endorsement of its websites or of a product or service on its websites (paragraph 4(b)(iv) of the Policy).

The Panel also considers that Mr Alvarez's offer to sell his trademark portfolio to the Complainant for USD 295,000 supports the findings of bad faith in this case.  The Panel finds it disingenuous for the Respondent to suggest that the offer was to sell the trademarks as opposed to the disputed domain names, since it is difficult to conceive of any purchaser who would buy the trademarks, certainly for the sum of money demanded, without the corresponding disputed domain names.  Nor can the Panel conceive of any purchaser other than the Complainant who could make legitimate, non-deceptive, use of the disputed domain names, which also indicates an intention to sell them to the Complainant.

The Panel therefore finds that the disputed domain names have been registered and are being used in bad faith.


**7. Decision**

For the foregoing reasons, in accordance with paragraphs 4(i) of the Policy and 15 of the Rules, the Panel orders that the disputed domain names, <belovedplayamujeresresort.com>, <excellenceelcarmenpuntacana.com>, <excellenceoysterbayresort.com>, <finestresortplayamujeres.com> and <finestresortpuntacana.com> be transferred to the Complainant.


*/Steven A. Maier/*
**Steven A. Maier**
Sole Panelist
Date:  May 29, 2023

1

2

**CERTIFICATE OF SERVICE**

3       I hereby certify that on November 13, 2023, a copy of the foregoing was filed

4  electronically using the Clerk of Court's CM/ECF system, which will provide notice to all

5  counsel of record.

6

7  Larry A. Dunn
   DENTON PETERSON DUNN
8  1930 N. Arboleda Road, Suite 200
   Mesa, AZ 85213
9  Email: larry@dentonpeterson.com

10

11                                          *Lisa N. Neal*

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28